**NOT FOR PUBLICATION**

```
             UNITED STATES DISTRICT COURT
                DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| WILLIAM DAVIS, JR., | CIVIL ACTION NO. 03-1025 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. |  |
| TOWNSHIP of LAKEWOOD, et al., |  |
| Defendants. |  |

**COOPER, District Judge**

This matter comes before the Court on the summary judgment motion, pursuant to Federal Rule of Civil Procedure ("Rule") 56, by defendants Ocean County (the "County"), Ocean County Prosecutor's Office (the "OCPO"), and E. David Millard, former Ocean County Prosecutor (collectively referred to as the "moving defendants"). The Court, for the reasons stated herein, will grant in part moving defendants' motion and enter judgment in favor of (1) the County and the OCPO as to all claims asserted against these entities and (2) Millard as to claims asserted against him in his official capacity.

**BACKGROUND**

**I.   Events Preceding Action**

Plaintiff, William Davis, Jr., was a passenger in a motor vehicle that was stopped by members of the Township of Lakewood Police Department (the "Police Department"), the Township of Lakewood Police Department Street Crimes Unit (the "SCU"), and

the Ocean County Narcotics Strike Force (the "NSF"),[1] on March 12, 2001. (2d Am. Compl. at ¶¶ 20-22.)[2] Plaintiff alleges that, despite his lack of resistance, he was physically assaulted by members of the Police Department, the SCU, and/or the NSF. (Id. at ¶¶ 22-30.) Plaintiff was arrested and charged with possession of less than fifty grams of marijuana, in violation of N.J.S.A. § 2C:35-10(A)(4), a municipal court offense. (Id. at ¶ 31.) The municipal court subsequently dismissed the charge. (Id. at ¶ 75.)

Plaintiff alleges that as a result of the assault he sustained bodily injuries but that "at no time while [he] was in the custody and control of the Police Department[,] the [SCU,] and/or the [NSF] was he offered first aid or other medical treatment for his injuries." (Id. at ¶ 33.) Plaintiff, after being charged, was released from custody. (Id. at ¶¶ 31.) Plaintiff then went to the emergency room at Paul Kimball Hospital in Lakewood, New Jersey, where it was found that he had sustained a facial fracture, contusions, cuts, and bruises. (Id. at ¶¶ 34-35.)

---

[1] The NSF is a department within the OCPO. The Court, for the purposes of this action, will treat any allegations against the NSF as allegations against the OCPO.

[2] Alex Gantt was the driver of the car in which plaintiff was a passenger. (2d. Am. Compl. at ¶ 20.)

## II. Procedural History

Plaintiff filed an initial complaint asserting multiple claims arising from the incident occurring on March 12, 2001. Plaintiff filed a second amended complaint on October 27, 2003 asserting claims against (1) the County; (2) the OCPO; (3) the NSF; (4) Millard, individually and in his official capacity; (5) the Township of Lakewood; (6) the Police Department; (7) the SCU; (8) John Steinhauer, investigator for the NSF, in his individual and official capacity; (9) Michael Mooney, a detective with the Police Department, in his individual and official capacity; (10) Michael Dennis, a sergeant with the Police Department, in his individual and official capacity; and (11) Chris Spagnulo, a patrolman with the Police Department, in his individual and official capacity.  (2d Am. Compl.)[3]  The second amended complaint alleges violations of plaintiff's constitutional rights, pursuant to 42 U.S.C. § 1983 ("Section 1983"), the New Jersey Constitution, and the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:10A.  The complaint also alleges various tort claims including harassment and intimidation, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (Id.)

Plaintiff alleges violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States

---

[3] Plaintiff also asserts claims against various defendants referred to as Doe and ABC.  (2d Am. Compl.)

Constitution.  (Id. at ¶¶ 38-71.)  Counts 1 through 3 respectively allege false arrest, excessive use of force, and deliberate indifference to plaintiff's medical needs.  (Id.) These counts are asserted against all named defendants except Millard.  (Id.)  Count 4 asserts a claim of malicious prosecution against all named defendants.  (Id. at ¶¶ 72-82.)  Counts 5 through 7 allege that defendants were aware of a pattern of excessive force and failed to adequately train, supervise, and discipline Lakewood Township police officers and members of the SCU and NSF regarding the use of force.  (Id. at 14-22.)[4]  Counts 8 through 13 assert state law claims under the NJTCA and the New Jersey Constitution.  (Id. at 22-28.)[5]  Plaintiff seeks money damages and injunctive relief.  (Id. at 29-30.)

    The moving defendants, on March 18, 2005, moved for summary judgment and, in the alternative, for leave to file a third party complaint against the State of New Jersey seeking to compel defense and indemnification for plaintiff's claims against them, pursuant to the NJTCA.  It is this motion that we now consider,

---

[4] Count 5 is asserted against the Township, the Police Department, the NSF, the County, Millard, and the OCPO.  (2d Am. Compl. at 14.)  Count 6 is asserted against the Township, the Police Department, the SCU, the County, and the NSF.  (Id. at 18.)  Count 7 is asserted against the Township, the Police Department, the SCU, the County, and the NSF.  (Id. at 19.)

[5] Count 8 is asserted against the Township, the Police Department, the SCU, the NSF, the County, the OCPO, and Millard.  (2d. Am. Compl. at 22.)  Counts 9 through 13 are asserted against all named defendants.  (Id. at 23-28.)

4

but only in the limited context of Eleventh Amendment Immunity. (See 3-23-05 Order limiting moving defendants' summary judgment motion to claims relating to the Eleventh Amendment.)

The moving defendants, after filing this motion, filed a third-party complaint against the State of New Jersey and Peter Harvey, in his official capacity as Attorney General for the State, seeking to compel the third-party defendants to defend and indemnify Millard and the OCPO for all claims asserted by plaintiff, on June 20, 2005.  (Ans. & 3d Party Compl., at 18-19.)

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the summary judgment movant has met this prima facie burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A nonmovant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Under this standard the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250 (citations omitted).[6]

---

[6] This motion could have been brought as a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). While we have applied the Rule 56 standard for summary judgment, the pleadings would also support a Rule 12(b)(6) dismissal for the reasons stated infra.

## II. **Eleventh Amendment Immunity and Vicarious Liability**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits against any state or its agencies in federal court by that state's own citizens as well as by citizens of other states. Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Absent a clear waiver by a state of its sovereign immunity under the Eleventh Amendment or a congressional abrogation of that immunity, a federal court lacks jurisdiction to hear claims brought by an individual against a state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.8 (1984). The Eleventh Amendment precludes both legal and equitable relief, as well as all claims under Section 1983. Id. at 100-01.

A suit is barred by Eleventh Amendment immunity "even though the state is not named a party to the action, as long as the state is the real party[-]in[-]interest." Carter v. City of Philadelphia, 181 F.3d 339, 347 (3d Cir. 1999) (quotations and emphasis omitted). See also Chisolm v. McManimon, 275 F.3d 315, 322-23 (3d Cir. 2001) ("Eleventh Amendment immunity may be available to a state party-in-interest notwithstanding a claimant's failure to formally name the state as a defendant.").

7

A state is a party-in-interest in proceedings where "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (citing Pennhurst, 465 U.S. at 101 n.11) (quotations omitted).

The state is the real party-in-interest if the named defendant is in fact an "arm of the state." See Chisolm, 275 F.3d at 323; Carter, 181 F.3d at 347. Eleventh Amendment immunity, therefore, extends to entities that function as an "arm of the state." Chisolm, 275 F.3d at 322-23. The Court, in considering whether each of the moving defendants is an "arm of the state," must examine three factors (the "Fitchik factors"): "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Chisolm, 275 F.3d at 323; see also Fitchik, 873 F.2d at 659. "[T]he three Fitchik factors are not weighed evenly and . . . the most important question in determining Eleventh Amendment immunity is whether any judgment would be paid from the state treasury." Carter, 181 F.3d at 348 (quotations omitted). This factor is critical and generally dispositive. Hess v. Port Auth. Trans-Hudson Copr., 513 U.S. 30, 49 (1994).

8

When applying the Fitchik factors to entities that perform in multiple capacities courts "must consider the capacity in which the entity was acting when its actions gave rise to the plaintiff's claim." Chisholm, 275 F.3d at 324. County prosecutors possess a "dual or hybrid status," functioning in an administrative capacity as well as a law enforcement capacity. Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996); see also Wright v. State, 778 A.2d 443, 454-55 (N.J. 2001).

> [W]hen county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the state. On the other hand, when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator, the county prosecutor in effect acts on behalf of the county that is the situs of his or her office.

Coleman, 87 F.3d at 1499. The county, therefore, "cannot be held vicariously liable for the actions of prosecutorial defendants involving the investigation of criminal activity" or the execution of such defendants' sworn duties to enforce the law. Wright, 778 A.2d at 455. See also Michaels v. State, 968 F.Supp. 230, 233 (D.N.J. 1997) (dismissing Section 1983 claims against the county because the county could not be held vicariously liable for the actions of its employees in enforcing state laws).

The Attorney General "maintains a general supervision over . . . county prosecutors . . . [and] that oversight relates to the maintenance of an effective statewide law enforcement policy."

9

Coleman, 87 F.3d at 1501. "[A] county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General." Wright, 778 A.2d at 462. See N.J.S.A. § 2A:158-4 ("The criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors."); N.J.S.A. § 52:17B-106 (stating that the county prosecutor's law enforcement function is subject to the Attorney General's right to supersede).

The state, because county prosecutors are "agents" or "officers" of the state, therefore, may be held vicariously liable under the NJTCA for the tortious law enforcement actions of the county prosecutor and his or her subordinates. Wright, 778 A.2d at 462. The state, under the NJTCA, has the duty to indemnify and defend county prosecutors and their subordinates for tortious conduct, limited to acts or omissions that do not involve actual fraud, actual malice, or wilful misconduct, associated with law enforcement activities. Id. at 465 (citing N.J.S.A. §§ 59:10A & 59:10-2).

Plaintiff's claims are brought, inter alia, pursuant to Section 1983. To properly assert a claim for alleged violations of constitutional rights pursuant to Section 1983, plaintiff must allege (1) a violation of a right secured by the Constitution of the United States and laws of the United States, and (2) that the

10

alleged deprivation was committed by a "person" acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  A cause of action under Section 1983, therefore, cannot lie against the State of New Jersey, its agencies, or its officials acting in their official capacities.

**III. Analysis**

    A.   Claims Against the County

The County alleges that it "played no role whatsoever in" the alleged actions; therefore, liability on its part would be derivative of its affiliation with the OCPO and Millard.  (Defs. Br. at 12.)  The County further contends that the OCPO and Millard were acting on behalf of the State at the time of the alleged wrongful conduct.  (Id.)  The County, therefore, asserts that the State is the proper party-in-interest for liability purposes; thus, the County is entitled to summary judgment as a matter of law because it is an inappropriate party that should not have been joined.  (Id. at 11.)

The Court holds that summary judgment in favor of the County, as to all claims asserted against it, is appropriate because the State of New Jersey, not the County, is the proper party-in-interest in this action.  The County is named in all

thirteen counts of the second amended complaint and each of those counts concerns plaintiff's arrest on March 12, 2001. Counts 1 through 4 and 8 through 13 allege, <u>inter alia</u>, tortious acts inflicted directly upon plaintiff by the OCPO and Millard. These counts would hold the County vicariously liable for the conduct of the county prosecutor and his agents in enforcing state laws. Counts 5 through 7 allege that the County and its agents were (1) aware of a pattern and practice of constitutional violations by the Township, the Police Department, the SCU, and the NSF and, (2) acting pursuant to official policy, practice, or custom, failed to instruct, train, supervise, control, and discipline these defendants. (2d Am. Compl. at 14-21.) These counts would hold the County vicariously liable for policies and customs of the OCPO that directly pertain to the enforcement of state laws.

  The Court will grant summary judgment in the County's favor as to these counts because the State of New Jersey, under the <u>Fitchik</u> factors, is the real party-in-interest. The first and most heavily weighted <u>Fitchik</u> factor is satisfied because the County may not be held vicariously liable for acts or omissions of its agents associated with the enforcement of the State's laws. The State, thus, under the NJTCA, would be vicariously liable for any judgment against the County. The second <u>Fitchik</u> factor weighs in favor of the County because the County's agents, the OCPO and Millard, in enforcing state laws and implementing

12

policies and customs pertaining to the enforcement of state laws, were acting as officers or agents of the State at the time of the alleged wrongful conduct. The third Fitchik factor is also met because the OCPO and Millard are not supervised by the County; rather, the State's Attorney General has supervisory responsibility for the law enforcement or prosecutorial activities of the OCPO and Millard. See Coleman, 87 F.3d at 1501-02; Wright, 778 A.2d at 462. The Fitchik factors, therefore, are satisfied such that the County is immune from suit under the Eleventh Amendment because the State is the real party-in-interest. See Carter, 181 F.3d at 347.

We will also grant summary judgment in favor of the County as to Count 3 of the second amended complaint. Count 3 asserts that the County, among other defendants, was deliberately indifferent to plaintiff's medical needs while plaintiff was held in custody. (2d Am. Compl. at 11-13.) Plaintiff, during oral argument, alleged facts pertaining to his deliberate indifference claim that were not contained in the complaint. (7-18-05 Oral Arg.) Plaintiff asserted that he was told that he would not be given medical care unless he agreed to remain in custody and be transported to the County jail. (Id.) Plaintiff has not, either in his second amended complaint or during oral argument, stated where he was being held in custody at the time he was denied medical care or who denied him medical care.

13

The Court, in construing plaintiff's allegations in his second amended complaint and asserted during oral argument, interprets plaintiff as alleging one of two scenarios: (1) that he was held in custody by the Police Department when he was allegedly denied medical care and that he was denied medical care because of a Lakewood Township policy that arrestees will not be afforded medical care or (2) that he was held in custody by the Police Department at the time he was denied medical care but that he was denied medical care because of an alleged County policy that an arrestee may only receive medical treatment if he is charged with an indictable offense.  If plaintiff is alleging the first scenario, then he fails to state a claim against the County because he does not contend any action or inaction by the County. If plaintiff is alleging the second scenario, then his claim against the County is barred by the Eleventh Amendment because, for the same reasons discussed supra, the alleged County policy would pertain to the County's conduct while acting as an arm of the state in enforcing state laws.

    B.   Claims Against the OCPO

The OCPO argues that it is entitled to summary judgment as a matter of law because, as an entity, it does not exist for purposes of assessing liability.  (Defs. Br. at 18, 21.)  It contends that the appropriate parties to this action, rather, are the employees of the OCPO in their official capacities, who were

14

acting as agents of the State at the time of the alleged wrongful conduct. (Id. at 21.) We need not address this argument because we find that the OCPO, for the reasons discussed supra, may not be held liable for its actions, or the actions of its agent Millard, relating to the enforcement of the state laws. The OCPO was acting as an arm of the state at the time of the alleged wrongful conduct; thus, the State of New Jersey is the real party-in-interest in this action. The OCPO, accordingly, is entitled to Eleventh Amendment immunity.[7] Summary judgment in the OCPO's favor as to all claims asserted against it, therefore, is appropriate.

### C. Claims Against Millard

Millard asserts that he is entitled to summary judgment both individually and in his official capacity as former Ocean County Prosecutor. (Defs. Br. at 22.)[8] Millard argues that, while

---

[7] The Court rejects plaintiff's contention that the moving defendants have waived entitlement to Eleventh Amendment immunity. (See Pl. Opp. Br. at 2-4.) "Merely because a State appears and offers defenses on the merits of a case, it does not automatically waive Eleventh Amendment immunity." College Sav. Bank v. Florida Prepaid, 131 F.3d 353, 365 (3d Cir. 1997). Moreover, "Eleventh Amendment sovereign immunity defenses can be raised at any time, even on appeal." In re: Havens, 229 B.R. 613, 619 (D.N.J. Bankr. 1998); see also Edelman, 415 U.S. at 678 (petitioner's Eleventh Amendment immunity defense was not barred even though petitioner failed to raise the defense before the trial court).

[8] Defendants' assertions as to Millard's individual liability are not before the Court because these assertions do not pertain to Eleventh Amendment immunity. (See Defs. Br. at

15

acting in his official capacity in prosecuting plaintiff, he was acting as an agent of the State. (Id.) He, therefore, contends that liability, as to claims asserted against him in his official capacity, should be imputed to the State. (Id. at 22-23.) The Court agrees in part.

We hold that Millard is entitled to summary judgment in his favor as to all claims asserted against him in his official capacity. Millard, in his role as county prosecutor, was acting as an arm of the state in enforcing state laws. The State, therefore, would be liable for a judgment against Millard. The Fitchik factors, for the reasons discussed supra, demonstrate that the State is the real party-in-interest in this action; therefore, Millard, in his official capacity is entitled to Eleventh Amendment immunity. The Court, however, will not dismiss claims asserted against Millard in his individual capacity because the Eleventh Amendment does not preclude suits against private individuals. Any claims against Millard in his individual capacity, therefore, remain viable.[9]

---

22-28.) The Court notes that Millard may be entitled to absolute or qualified immunity. See, e.g., McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992); Schrob v. Catterson, 948 F.3d 1402 (3d Cir. 1991). We, however, expressly reserve judgment on this issue as this issue is not presently before us.

[9] The Court notes that, while Steinhauer is not a party to this motion, the analysis discussed herein in relation to Millard may also apply to Steinhauer.

## CONCLUSION

The Court, for the reasons stated <u>supra</u>, will grant summary judgment in favor of the County, the OCPO, and Millard, in his official capacity, as to all claims asserted against these parties. An appropriate order and judgment will be issued.

<u>  s/ Mary L. Cooper    </u>
**MARY L. COOPER**
United States District Judge
